IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JACEN DAVIDSON, ET AL., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) NO. 3:23-cv-00050 |
| v. | ) JUDGE RICHARDSON |
| | ) |
| ELITE STEEL, LLC, and ALISHA MORGAN, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is "Plaintiffs' Motion for Temporary Restraining Order" (Doc. No. 7 "Motion"), filed collectively on behalf of all Plaintiffs. Three of the Plaintiffs are ERISA funds—namely, Iron Workers of Tennessee Valley and Vicinity Welfare Fund; Iron Workers of Tennessee Valley and Vicinity Pension Fund; and Iron Workers of Tennessee Valley and Vicinity Annuity Fund (collectively "Plaintiff Funds")—and the other Plaintiff is the trustee (Jacen Davidson, "Trustee") for each of the Plaintiff Funds. Via the motion, Plaintiffs request a temporary restraining order ("TRO") enjoining Defendant Alisa Morgan ("Morgan") from "disposing of any or all of [Plaintiff] Fund[s'] assets in her possession." (Doc. Nos. 7 at 1, 8 at 1). Plaintiffs have filed a memorandum (Doc. No. 8, "Memorandum") and declaration (Doc. No. 9, "Declaration") in support of the Motion.

In the Memorandum (and elsewhere), Plaintiffs allege that Defendant Elite Steel, LLC (called merely "Defendant" by Plaintiffs, even though it has a co-Defendant, *i.e.*, its owner, Morgan), has been delinquent in ERISA contributions to Plaintiff Funds since at least May 2022. Plaintiff further alleges that on January 6, 2023, Defendant Elite issued a check in the amount of

$95,000 as partial payment to Plaintiff Funds, only to have the check later returned (to the third-party administrator for Plaintiff Funds, who apparently deposited the check) as insufficient (Doc. No. 8 at 1).  The Trustee has declared that Morgan was liquidating all physical assets of Defendant and that Defendant will be dissolved (Doc. No. 9 at 2).  For the reasons stated herein, the Motion will be denied.

BACKGROUND

Plaintiffs initiated this action on January 19, 2023, asserting claims that Defendant and Morgan breached provisions of: (i) the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980, in particular 29 U.S.C. § 1145 (Section 515 of ERISA); (ii) a collective bargaining agreement; and (iii) the trust agreement whereby the Plaintiff Funds were created and operate. (Doc. No. 1 at 3).  The nature of the alleged breach was the failure to pay any contributions (or interest due thereon) to Plaintiff Funds and failing to submit reports with employee work history. (*Id.*). In sum, Plaintiffs seek a permanent injunction enjoining Defendant and Morgan from violating the provisions of ERISA, the collective bargaining agreement, and the trust agreement, as well as a judgment against Defendant and Morgan for all contributions that are owed, plus the greater of double interest or single interest plus liquidated damages (Doc. No. 1 at 5).

LEGAL STANDARD AND ANALYSIS

TROs and preliminary injunctions are considered preventive, prohibitory, or protective measures taken pending resolution on the merits, *see Clemons v. Board of Educ. of Hillsboro, Ohio*, 228 F.2d 853, 856 (6th Cir. 1956), and are considered extraordinary relief. *See Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18, Int'l Typographical Union*, 471 F.2d 872, 876 (6th Cir. 1972). A TRO should be granted only if the movant carries its burden

of proving that the circumstances clearly demand it. *Overstreet v. Lexington–Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Those seeking a TRO (or preliminary injunction) must meet four requirements.[1] They must show a likelihood of success on the merits; irreparable harm in the absence of the injunction; the balance of equities favors them; and that public interest favors an injunction. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400, 403 (6th Cir. 2022).

In deciding whether to grant the requested TRO, the Court makes its evaluation of these requirements based on the current record. The Court does not intend to suggest that any of its findings herein are not subject to potential change at later stages in this case based on a changing record.

As to the first requirement, whether Plaintiffs have sufficiently shown a likelihood of success on the merits, some threshold legal points deserve mention. Pursuant to Section § 502(a)(3) of ERISA (29 U.S.C. § 1132(a)(3)), a fiduciary such as the Trustee may bring a civil action to obtain "appropriate equitable relief" to enforce any provisions of ERISA or the terms of an ERISA plan. 29 U.S.C. § 1132(a)(3). *See also Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 143 (2016); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). The equitable relief available to fiduciaries is limited to those categories of relief that were typically available in equity. *Hagan v. Nw. Mut. Life Ins. Co.,* No. 3:15-CV-00298-CRS, 2017 WL 4542775, at *6 (W.D. Ky. Oct. 11, 2017) (citing *Great-West,* 534 U.S. at 210). One such

---

[1] Published Sixth Circuit case law stands unmistakably for the proposition that these four items are *factors* rather *requirements,* except that irreparable harm is a requirement (and, if it exists and thus keeps the possibility of a TRO alive, thereafter becomes a factor to be balanced along with the other three factors). *See, e.g.*, *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019). Alas, this case law is inconsistent with more recent Sixth Circuit case law and with Supreme Court case law (including the two cases cited above) describing these as all being requirements. The Court believes that it is constrained the follow the latter line of cases.

remedy typically available in equity is the imposition of a constructive trust or equitable lien, whereby "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 213.[2] The Supreme Court has affirmed the use of a constructive trust or equitable lien as a tool for recovery in ERISA cases, noting that in equity cases, such a lien[3] could ordinarily be enforced against specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds. *Montanile*, 577 U.S. at 143. In the case that all the specifically identifiable funds are completely dissipated, however, the lien "could not attach to the defendant's general assets instead because those assets were not part of the specific thing to which the lien attached." *Id.* at 659. Therefore, as correctly noted by Plaintiffs in their Memorandum, "[a]n equitable lien or constructive trust under ERISA, instead, attaches only to specifically identifiable plan assets. This is true even 'if the defendant wrongfully dissipates the equitable lien to avoid its enforcement.' *Id.*" (Doc. No. 8 at 6).

However, Plaintiffs have failed to identify specific property currently in Defendant or Morgan's possession that is 1) earmarked as a contribution to Plaintiff Funds (or is otherwise an identifiable plan asset) and/or that is 2) subject to an equitable lien. Aside from conclusory statements made by Plaintiffs, the Court is simply without any information indicating what specific

---

[2] For a remedy to constitute "equitable relief" under § 502(a)(3) requires more than asking for an equitable remedy; the claim must be equitable as well. *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Haynes*, 966 F.3d 655, 657 (7th Cir. 2020) (citing *Montanile*, 577 U.S. at 142). An action to enforce "the modern-day equivalent of an equitable lien by agreement" is one such claim. *Id.* (citing *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 98 (2013)). That's because a person who agrees to convey a specific thing "even before it is acquired" becomes a trustee on receiving title. *Id.*

[3] For present purposes, the Court sees no material distinction between a constructive trust and equitable lien; thus, for the ease of discussion, the Court herein will refer primarily to the latter.

and identifiable property, if any, is currently in Defendant's possession and whether that property could be traced to an identifiable plan asset.[4]

From this reasoning, it follows that Plaintiffs' proposed TRO (which Plaintiffs call a proposed "preliminary injunction," (Doc. No. 7-1 at 1), which is an erroneous moniker inasmuch as a preliminary injunction would be procedurally premature at the current juncture)[5] actually would be inappropriately vague. The proposed TRO would provide that (and only that) Defendant Alisha Morgan is prohibited, either directly or indirectly, and whether alone or in concert with others, including any officer, agent, servant, employee, attorney, and/or representative of them, from disbursing, spending, moving, or transferring any or all of the Plaintiff Funds' assets in her possession." (*Id.*). If the Court were to issue this TRO, it would merely beg the question: what all (if anything) constitutes "Plaintiff Funds' assets in her possession"? The Court certainly cannot tell, and it could not and would not expect those subject to the TRO to be able to tell. This phrase is too indefinite, at least on the instant record.

The decision to grant a TRO is within the discretion of the district court. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) ("The district court's decision to grant a temporary restraining order, when appealable, is reviewed by this court for abuse of discretion." (internal quotation marks omitted). Under these circumstances, the Court declines to

---

[4] To the extent Plaintiff argues that the $95,000 Defendants paid to Plaintiff Funds (but was later returned by the bank) were plan assets, the Court is without knowledge as to the current status of these funds, e.g., if the funds were dissipated by Morgan.

[5] The Court is not sure whether Plaintiffs truly intended to call this a preliminary injunction. On the one hand, it was attached to a motion requesting a TRO, and surely counsel would have realized that a request for an immediate preliminary injunction—and Plaintiffs clearly were seeking immediate relief—would be improper. On the other hand, the title of the document proposed for entry is quite clear ("[Proposed Preliminary Injunction]") and orders what is clearly a preliminary injunction and not a TRO (i.e., an "[i]njunction [that] is effective immediately and shall remain in effect until trial." (Doc. No. 7-1 at 1). This confusion further supports the Court's decision not to exercise its discretion to grant whatever relief Plaintiffs are (or supposedly are) asking for.

exercise its discretion to grant the requested TRO, and the Court indeed wonders whether such a grant under the current record might constitute an abuse of discretion, something that *Brunner* serves to remind the Court to be sure to avoid. *See id.* at 362 (conclud[ing] that "the district court abused its discretion in granting the TRO").

## CONCLUSION

Because the Plaintiffs have failed to show a likelihood of success on the merits, a TRO is not authorized under the law. And even if some kind of temporary injunctive relief could be authorized here, the Court declines in its discretion to grant the specific temporary injunctive relief requested here because it is to indefinite.

Accordingly, the Motion (Doc. No. 7) is DENIED without prejudice.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE